# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

MCKENZIE JOHNSON, JANE DOE 1,
JANE DOE 2, JANE DOE 3,
JANE DOE 4, JANE DOE 5,
JANE DOE 6, JANE DOE 7,
JANE DOE 8, JANE DOE 9,
JANE DOE 10, JANE DOE 11,
JANE DOE 12, JANE DOE 13,
JANE DOE 14, JANE DOE 15,
JANE DOE 16, JANE DOE 17,
JANE DOE 18, JANE DOE 19,
JANE DOE 20, JANE DOE 21,
JANE DOE 22, JANE DOE 23,
JANE DOE 24, JANE DOE 25,
JANE DOE 26, JANE DOE 27,
JANE DOE 28, JANE DOE 29,
JANE DOE 30, JANE DOE 31,
JANE DOE 32, JANE DOE 33,
JANE DOE 34, JANE DOE 35,
JANE DOE 36, JANE DOE 37,
JANE DOE 38, JANE DOE 39,
JANE DOE 40, and JANE DOE 41
on behalf of themselves and others
similarly situated,

       Plaintiffs,             Case No. 25-10855

v.                           Hon. Mark A. Goldsmith

MATTHEW WEISS; the REGENTS
OF THE UNIVERSITY OF MICHIGAN;
the UNIVERSITY OF MICHIGAN;
KEFFER DEVELOPMENT SERVICES,
LLC,

       Defendants.

| | |
|---|---|
| Jonathan R. Marko (P72450) | Daniel B. Tukel (P34978) |
| MARKO LAW, PLLC | BUTZEL LONG |
| *Attorneys for Plaintiff* | Attorney for Defendant |
| 220 W. Congress, 4th Floor | 201 W. Big Beaver Road Suite 1200 |
| Detroit, MI  48226 | Troy, Michigan 48084 |
| (313) 777-7529 | (248) 258-1616 |
| jon@markolaw.com | tukel@butzel.com |

Noah S. Hurwitz (P74063)
Brendan J. Childress (P85638)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
340 Beakes St., Suite 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
brendan@hurwitzlaw.com

## **PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Plaintiffs McKenzie Johnson, Jane Does 1 through 41, on behalf of themselves and others similarly situated, by and through their attorneys, Hurwitz Law PLLC and Marko Law PLLC, hereby respectfully move this Court for an order requiring Defendant University of Michigan and Keffer to bear the expense of securely transferring all private information in its possession related to the Weiss investigation to a qualified neutral forensic data security firm that would (a) be entrusted with securing the evidence in this case; and (b) be responsible for communicating directly with any student-athletes regarding sensitive, intimate, or otherwise private information.  In support of their Motion, Plaintiffs rely on the facts and law contained in the attached Brief.

2

Respectfully submitted,

HURWITZ LAW PLLC

*/s/  Brendan J. Childress*
Noah S. Hurwitz (P74063)
Brendan J. Childress (P85638)
HURWITZ LAW PLLC
*Attorneys for Plaintiffs*
340 Beakes St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
brendan@hurwitzlaw.com

Dated: April 13, 2025

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

MCKENZIE JOHNSON, JANE DOE 1,
JANE DOE 2, JANE DOE 3,
JANE DOE 4, JANE DOE 5,
JANE DOE 6, JANE DOE 7,
JANE DOE 8, JANE DOE 9,
JANE DOE 10, JANE DOE 11,
JANE DOE 12, JANE DOE 13,
JANE DOE 14, JANE DOE 15,
JANE DOE 16, JANE DOE 17,
JANE DOE 18, JANE DOE 19,
JANE DOE 20, JANE DOE 21,
JANE DOE 22, JANE DOE 23,
JANE DOE 24, JANE DOE 25,
JANE DOE 26, JANE DOE 27,
JANE DOE 28, JANE DOE 29,
JANE DOE 30, JANE DOE 31,
JANE DOE 32, JANE DOE 33,
JANE DOE 34, JANE DOE 35,
JANE DOE 36, JANE DOE 37,
JANE DOE 38, JANE DOE 39,
JANE DOE 40, and JANE DOE 41
on behalf of themselves and others
similarly situated,

       Plaintiffs,           Case No. 25-10855

v.                        Hon. Mark A. Goldsmith

MATTHEW WEISS; the REGENTS
OF THE UNIVERSITY OF MICHIGAN;
the UNIVERSITY OF MICHIGAN;
KEFFER DEVELOPMENT SERVICES,
LLC,

       Defendants.

| | |
|---|---|
| Jonathan R. Marko (P72450) | Daniel B. Tukel (P34978) |
| MARKO LAW, PLLC | BUTZEL LONG |
| *Attorneys for Plaintiff* | Attorney for Defendant |
| 220 W. Congress, 4th Floor | 201 W. Big Beaver Road Suite 1200 |
| Detroit, MI  48226 | Troy, Michigan 48084 |
| (313) 777-7529 | (248) 258-1616 |
| jon@markolaw.com | tukel@butzel.com |

Noah S. Hurwitz (P74063)
Brendan J. Childress (P85638)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
340 Beakes St., Suite 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
brendan@hurwitzlaw.com

## BRIEF IN SUPPORT OF PLAINTIFFS' MOTION
## FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................v

INDEX OF EXHIBITS.................................................................. viii

CONCISE STATEMENT OF ISSUES PRESENTED..................................... ix

INTRODUCTION..................................................................1

I.    PLAINTIFFS CAN SUCCEED ON THE MERITS OF THEIR CLAIMS. ..................................................................9

    A.    Defendants Violated the Computer Fraud and Abuse Act...9

    B.    Defendants Violated the Stored Communications Act........10

    C.    Defendants Violated Title IX. .................................................11

    D.    Defendants Violated Plaintiffs' Civil Rights Under 42 U.S.C. § 1983 – State Created Danger. ..................................12

    E.    Defendants Failed to Train and Supervise as Required by 42 U.S.C. § 1983..................................................................14

    F.    Defendant Weiss is Liable for Intrusion upon Seclusion. ...15

    G.    Defendant Weiss was Grossly Negligent.................................16

    H.    Defendants were Negligent in Hiring Keffer.........................16

    I.    Defendant University of Michigan was Negligent as to Training, Supervision, Entrustment, and Retention. ..........17

    J.    Defendant Weiss is Liable for Trespass to Chattels. ...........18

    K.    Defendants Weiss and Keefer Violated MCL § 600.2919a. 19

    L.    Defendant Weiss is Liable for Assault. .................................21

    M.    Defendant Weiss is Liable for Intentional Infliction of Emotional Distress. ..................................................................21

    N.    Defendants Violated Michigan's Identity Theft Protection Act..................................................................22

II.    PLAINTIFFS WILL SUFFER IRREPARABLE HARM WITHOUT A PRELIMINARY INJUNCTION. ..........................23

III.    THE INJUNCTION WOULD NOT CAUSE SUBSTANTIAL HARM TO OTHERS..................................................................24

IV.    THE INJUNCTION IS IN THE PUBLIC INTEREST.................24

**CONCLUSION**.......................................................................................................**25**

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*A.P. by & through Pyscher v. A.P.*, 598 F. Supp. 3d 598 (E.D. Mich. 2022) .........11

*Abu v. Dickson*, 107 F.4th 508 (6th Cir. 2024) .........................................................8

*Apex Tool Grp., LLC v. Wessels*, 119 F. Supp. 3d 599 (E.D. Mich. 2015) .............24

*Arthur v. Hepler*, No. 19-11277, 2019 WL 6038530 (E.D. Mich. Nov. 14, 2019) .................................................................................................................15

*Automation & Modular Components, Inc. v. Blackford*, No. 23-CV-12420, 2023 WL 7276487, (E.D. Mich. Nov. 3, 2023)................................................... 22, 24

*Brown v. Brown*, 478 Mich. 545, 739 N.W.2d 313 (2007) ....................................16

*Cellnet Comm'ns, Inc. v. New Par*, 291 F. Supp. 2d 565 (E.D. Mich. 2003)..........22

*CLT Logistics v. River W. Brands*, 777 F. Supp. 2d 1052 (E.D. Mich. 2011) .........7

*D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324 (6th Cir. 2019) .....................................22

*Doe on behalf of Doe #2 v. Metro. Gov't of Nashville & Davidson Cnty., Tennessee*, 35 F.4th 459 (6th Cir. 2022)...............................................................10

*Doe v. Peterson*, 784 F. Supp. 2d 831 (E.D. Mich. 2011).......................................14

*Doyle v. Detroit Dev. Real Est., L.L.C.*, No. 298354, 2011 WL 3594001 (Mich. Ct. App. Aug. 16, 2011) ..............................................................................22

*Dunn v Bennett*, 303 Mich App 767, 846 N.W.2d 75 (2014)..................................19

*Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690 (6th Cir. 2006) .....................................................................................................13

*Espinoza v. Thomas*, 189 Mich. App. 110, 472 N.W.2d 16 (1991) .......................20

*Foremost Ins Co v Allstate Ins Co*, 439 Mich. 378, 486 N.W.2d 600 (1992).........19

*Goldblum v. Univ. of Cincinnati*, 62 F.4th 244 (6th Cir. 2023) .............................10

*Hamed v Wayne Co.*, 490 Mich. 1, 803 N.W.2d 237 (2011)...................................17

*Hayley v. Allstate Ins. Co.*, 262 Mich.App. 571 N.W.2d 273 (2004).....................21

*Hogue v. Am. Paper Optics, LLC*, No. 217CV02670MSNDKV, 2019 WL 1318559 (W.D. Tenn. Jan. 14, 2019)...............................................................24

*Jaber v. P & P Hosp., LLC*, No. 363572, 2024 WL 5011976 (Mich. Ct. App. Dec. 6, 2024) ...............................................................................................17

*Johnson on behalf of X.M. v. Mount Pleasant Pub. Sch.*, 745 F. Supp. 3d 479 (E.D. Mich. 2024) ...................................................................................................20

*Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998) ...............................13

*Lasco Foods, Inc. v. Hall & Shaw Sales, Marketing, & Consulting, LLC*, 2009 WL 3523986 (E.D. Mo. Oct. 26, 2009) ......................................................................10

*Leary v. Daeschner*, 228 F.3d 729 (6th Cir. 2000)....................................................7

*Lipian v. Univ. of Michigan*, 453 F. Supp. 3d 937 (E.D. Mich. 2020)....................13

*M.J. by & through S.J. v. Akron City Sch. Dist. Bd. of Educ.*, 1 F.4th 436 (6th Cir. 2021) ....................................................................................................................12

*Mackie v. Bollore S.A.*, No. 286461, 2010 WL 673295 (Mich. Ct. App. Feb. 25, 2010) ....................................................................................................................18

*Magley v M & W Inc*, 325 Mich App 307, 926 N.W.2d 1 (2018)................... 19, 20

*Maiden v. Rozwood*, 461 Mich. 109, 597 N.W.2d 817 (1999)................................15

*Mallory v. Ohio Univ.,* 76 Fed.Appx. 634 (6th Cir.2003) .......................................10

*Mueller v. Brannigan Bros. Restaurants & Taverns LLC*, 323 Mich. App. 566 N.W.2d 545 (2018) ..............................................................................................16

*Nelson-Molnar v. Ann Arbor Pub. Sch.*, No. 23-CV-11810, 2024 WL 2059709 (E.D. Mich. May 8, 2024)....................................................................................12

*Nichols v. Wayne Cnty., Michigan*, 822 F. App'x 445 (6th Cir. 2020)....................22

*Parker v. Midwest Loan Servs., Inc.*, No. 15-11708, 2016 WL 1242440 (E.D. Mich. Mar. 30, 2016) ...........................................................................................21

*Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964 (6th Cir. 2002) .........................24

*Reilly v. Vadlamudi*, 680 F.3d 617 (6th Cir. 2012)..................................................15

*Sampson v. Murray*, 415 U.S. 61 (1974) ................................................................23

*Swetlic Chiropractic & Rehab. Ctr., Inc. v. Foot Levelers, Inc.*, No. 2:16-CV-236, 2016 WL 1657922 (S.D. Ohio Apr. 27, 2016) ...................................................24

*Tobias v. Pletzke*, 933 F. Supp. 2d 892 (E.D. Mich. 2013) ....................................18

*Tobin v. Civil Serv. Comm'n,* 416 Mich. 661, 331 N.W.2d 184 (1982) .................14

*Tobin v. Michigan Civ. Serv. Comm'n*, 416 Mich. 661, 331 N.W.2d 184 (1982)...14

*Van Buren v. United States*, 593 U.S. 374 (2021) .....................................................8

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008)..............................................................................................................7

*Yannotti v. City of Ann Arbor*, No. 22-12147, 2024 WL 3585089 (E.D. Mich. July 30, 2024) ...........................................................................................18

*Zsigo v Hurley Med. Ctr.*, 475 Mich. 215, 716 N.W.2d 220 (2006) .......................17

## Statutes

18 U.S.C. § 1030(a)(2) ...........................................................................................8

18 U.S.C. § 1030(a)(2)(C) ...................................................................................8, 9

18 U.S.C. § 2701(a) ................................................................................................9

20 U.S.C. § 1681(a) ..............................................................................................10

MCL § 445.65(1) ..................................................................................................21

MCL § 600.2919a .................................................................................................19

## Other Authorities

2 Linda Miller Atkinson et al., *Torts: Michigan Law and Practice* § 13.53 (ICLE 2011 supp.) ..........................................................................................................18

Restatement (Second) of Torts §§ 217-219 (Am. L. Inst. 1965); *Burns v. Kirkpatrick*, 51 N.W. 893, 893 (1892) ..................................................................18

## <u>INDEX OF EXHIBITS</u>

1. CBS News Detroit – "University of Michigan Says Hackers Gained Personal Information of Individuals in Cyberattack

2. Emails from University of Michigan Police and the University of Michigan Privacy Office

## <u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

I.      Whether Plaintiffs are entitled to a preliminary injunction requiring Defendant University of Michigan and Keffer to bear the expense of securely transferring all private information in its possession related to the Weiss investigation to a qualified neutral forensic data security firm that would (a) be entrusted with securing the evidence in this case; and (b) be responsible for communicating directly with any student-athletes regarding sensitive, intimate, or otherwise private information where Plaintiffs have  a high likelihood of success on the merits, Plaintiffs will suffer irreparable harm without a preliminary injunction because both Defendant University of Michigan and Keffer have proven to be not up to the task of safeguarding Plaintiff's most private and sensitive information, the preliminary injunction would not cause harm to anyone, and there is a substantial public interest in protecting helpless victims from having their private information viewed by University employees.

This Court Should Answer "Yes" and Grant Plaintiffs a Preliminary Injunction.

## **INTRODUCTION**

The University of Michigan's data security failures are the reason that tens of thousands of college students nationwide are facing irreparable harm based on further observation and dissemination of image and video files that the University admits are of an "intimate" nature. It would be foolish for any of the victims of this senseless and preventable crime to trust this University to safeguard that information for any longer. More than two years after learning of crimes perpetrated by its prominent football coach, we now know that the University prioritized the coverup of a heinous crime over transparency to student-athletes. The time for the University to behave responsibly has passed and now it is critical that the University be ordered to relinquish control of Plaintiffs' private information and intimate files. There are nationally renowned data security experts who can safeguard the evidence in this case and prevent the University from inflicting more irreparable harm on Plaintiffs. There is no room for compromise. As the discovery period in this lawsuit begins and Plaintiffs seek information on what was stolen, the University cannot be trusted to handle Plaintiffs' private documents and intimate materials. The thought of countless University employees still having access to what was stolen by Coach Weiss is horrifying. Before another University employee can violate Plaintiffs' privacy rights, this Court must order the University to relinquish all evidence in this case within its possession, custody, or control to a qualified neutral data security

expert who will safeguard the information and create a secure methodology for Plaintiffs to investigate the extent of what Coach Weiss stole from them.

"Irreparable" is an understatement for describing the level of harm suffered by Plaintiffs and students nationwide.  The University learned as early as February 2023 that a prominent football coach utilized his position of authority at the University to steal the private information of student athletes all over the nation.  The University then clearly decided to cover up the crime by not alerting victims that their information was stolen.  Meanwhile, countless employees of the University have had the ability to access the "intimate" image and video files for over two years because the University prevented victims from protecting themselves.  Even after it became public recently that Coach Weiss perpetrated heinous crimes, the University failed to act in a responsible manner by not communicating with the victims.

One of those victims is Plaintiff McKenzie Johnson, who was a student-athlete at Grambling State University.  Ms. Johnson was alerted by the Department of Justice that Coach Weiss stole her information and hacked into her private accounts.  The University knew this horrific fact back in February 2023 and made a deliberate decision not to warn Ms. Johnson.  For two years, Coach Weiss and countless employees of the University have had access to Ms. Johnson's private materials that are critical evidence in this case.  It is Ms. Johnson's absolute right to learn what was stolen from her and take steps to finally safeguard her private things.

2

To give Ms. Johnson, Plaintiffs, and thousands of students nationwide an opportunity to learn the extent of the University's crimes and an opportunity to mitigate the disaster, Plaintiffs are seeking an order requiring the University and Keffer to bear the expense of securely transferring all private information in its possession related to the Weiss investigation to a qualified neutral forensic data security firm that would be (a) entrusted with securing the evidence in this case; and (b) responsible for communicating directly with any student-athletes regarding sensitive, intimate, or otherwise private information going forward.   Allowing the wrongdoer to continue to possess Plaintiffs' stolen information is abhorrent and disgusting.   Plaintiffs are repeatedly victimized the longer that continues, now knowing that University personnel have had access to the intimate photos and videos and, in all likelihood, have further viewed or even potentially distributed the photos and videos, thus perpetuating the crimes committed by Coach Weiss.

## **CONCISE STATEMENT OF FACTS[1]**

Plaintiffs are current or former University of Michigan student-athletes, as well as student-athletes nationwide, whose personal information and/or private photographs were hacked into and stolen by the University of Michigan's now federally indicted football coach, Matthew Weiss.   During his employment, Weiss

---

[1] The factual allegations contained within Plaintiffs' Brief in Support of Plaintiffs' Motion for Preliminary Injunction are contained within Plaintiffs' First Amended Complaint unless otherwise cited.

unlawfully captured Plaintiffs' private and sensitive personal records from electronic mail sources without permission.   In doing so, Weiss targeted all Plaintiffs by infiltrating athlete databases that were maintained by Keffer, from which he gained access to by virtue of his elevated level of access as an Offensive Coordinator for the University of Michigan football team.     Between approximately 2015 and January 2023, Weiss unlawfully accessed the digital accounts of over 3,300 individuals including Plaintiffs and other University student-athletes.   Weiss was able to do so because as explained below, the University of Michigan and the Regents of the University of Michigan granted him access credentials, enabling Weiss to obtain and misuse Plaintiffs' private images and information.   Defendants Regents of the University of Michigan and the University of Michigan were aware that Weiss, due to his job responsibilities as Offensive Coordinator for the University of Michigan football team, had a significant advantage in accessing private information and the personal privacy interests of Plaintiffs and their peers.

As the University of Michigan Football Team's Offensive Coordinator, the University employed Weiss and had authority over him as well as assigned and directed Weiss's job responsibilities.   The job duties enabled to Weiss by the University of Michigan enabled him to access and exploit private, intimate information and images of Plaintiffs and others, which had been entrusted to the University for safekeeping.   But the University neglected this heightened

responsibility and recklessly allowed Weiss to access and exploit the private information and images of Plaintiffs and other student-athletes.   Similarly, Defendant Regents of the University of Michigan had a responsibility to oversee the University's operations and ensure that it upheld ethical standards and protected its students.   This duty of care was violated when the Regents and University of Michigan failed to adequately supervise Weiss which resulted in the unlawful invasion of privacy, affecting Plaintiffs and thousands of others by exposing them to privacy violations.

The Regents, the University of Michigan, and Weiss' misconduct also implicates Keffer because Keffer agreed to securely store Plaintiffs' sensitive data by ensuring it remained inaccessible to university employees like Weiss and other unauthorized third parties.   Keffer was aware that the information stored for Plaintiffs and others was private, personal, and sensitive and had an explicit obligation to protect Plaintiffs' sensitive data but failed to do so by failing to implement any policies, procedures, or security measures to adequately protect the information entrusted to it by Plaintiffs and others.  Due to Keffer's security failures, Weiss accessed Plaintiffs' private, personal, and intimate images and information.

The failure of the Regents of the University of Michigan, the University of Michigan, and Keffer to supervise Weiss, review his conduct, assess his credentials, monitor his work, or ensure oversight enabled him to exploit Plaintiffs and others

without any reporting of his actions.  As a result, Weiss acquired private, "intimate" photographs and videos of Plaintiffs that were meant to remain confidential.  Due to this failure, Weiss accessed, without authorization, student-athlete databases from over 100 colleges and universities nationwide maintained by Keffer.

Despite decades of complaints and reports of misconduct within athletic departments, the University, the Regents of the University of Michigan, and Keffer repeatedly failed to review how Plaintiffs' personal data was stored, maintained, and accessed.  Indeed, the University of Michigan and the Regents neglected to investigate Keffer's protocols or implement safeguards regarding Keffer's work with students and their private images, failing to uphold their duty to protect entrusted personal data.  Exploiting these unsecured databases, Weiss downloaded personally identifiable information (PII) and medical records of more than 150,000 athletes including Plaintiffs.  Weiss also downloaded athlete passwords used to access Keffer's computer system to view and update their data, including Plaintiffs' credentials.  The athletes' passwords were encrypted but were poorly secured due to the Non-Individual Defendants' recklessness.  Consequently, Weiss, who was left unsupervised, managed to easily crack the encryption using basic internet research.

Then, through open-source research, Weiss further investigated targeted athletes, such as Plaintiffs, collecting personal details like their mothers' maiden names, pets' names, birthplaces and nicknames—information Plaintiffs had

entrusted to the Non-Individual Defendants, but which was inadequately protected. Using this combination of data obtained from student-athlete databases and additional research, Weiss, due to the lack of oversight by the Non-Individual Defendants, was able to gain access to over 2,000 athletes' social media, email, and cloud storage accounts including those belonging to Plaintiffs.  Once inside these accounts, Weiss searched for and downloaded private and intimate photographs and videos that were not publicly available.  Weiss also accessed, without authorization, the social media, email, and cloud storage accounts of more than 1,300 additional students and alumni from universities across the county, including Plaintiffs.  Upon accessing these accounts, Weiss extracted personal and intimate content.

Defendant University of Michigan acknowledges that these events occurred. (**Ex. 2**, Emails from University of Michigan Police and the University of Michigan Privacy Office.)  In an email dated February 13, 2023 with the subject "Notification: Unauthorized Access of Your UMICH Account," the U-M Privacy Office wrote:

> In late December 2022, potentially unauthorized activity in your U-M Google account was identified.  As part of the U-M cybersecurity team's investigation, they discovered that a threat actor manipulated a flaw in self-service password-recovery ("Forgot password") to change your password and gain unauthorized access to your U-M Google account.  These findings were escalated to UMPD, which subsequently launched a criminal investigation.
>
> Based on the U-M cybersecurity team's investigation, it appears that the threat actor gained unauthorized access to some of your accounts and/or data.  They also logged into your U-M account management settings, where they may have viewed and/or changed your password

recovery phone number and password recovery email address. Additionally, they logged into your M+Google email and/or Google Drive. The U-M cybersecurity team was unable to tell which emails or files they may have accessed or deleted while logged in, or whether your email settings were altered.

At this very moment, the University of Michigan has within its possession, custody, and control the illegally obtained private information of Plaintiffs, including image and video electronic files of an "intimate" nature. The University has no reason for it to possess such information and there are no privacy safeguards in place to adequately prevent University personnel from committing additional crimes against Plaintiffs. Indeed, even discovery in this lawsuit cannot be conducted without University of Michigan personnel handling Plaintiffs' stolen information, which itself would be a crime and something that cannot be risked. Accordingly, requiring the University to relinquish all private information in its possession is the only way to protect Plaintiffs and thousands of other nationwide class members impacted by these atrocious crimes.

## LEGAL STANDARD

A plaintiff seeking a preliminary injunction must establish "(1) a strong likelihood of success on the merits; (2) that [plaintiff is] likely to suffer irreparable harm without an injunction; (3) that the injunction would not cause substantial harm to others; and (4) that the injunction is in the public interest." *CLT Logistics v. River W. Brands*, 777 F. Supp. 2d 1052, 1064 (E.D. Mich. 2011) (citing *Winter v. Nat.*

*Res. Def. Council, Inc.*, 555 U.S. 7, 19, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008).

"These factors are to be balanced against one another and should not be considered prerequisites to the grant of a preliminary injunction." *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000).

## ARGUMENT

### I.   PLAINTIFFS CAN SUCCEED ON THE MERITS OF THEIR CLAIMS.

#### A.   Defendants Violated the Computer Fraud and Abuse Act.

"The Computer Fraud and Abuse Act protects our Nation's computers from hacking" and the "Act's computer trespass provision covers anyone who 'intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information.'" *Abu v. Dickson*, 107 F.4th 508, 514 (6th Cir. 2024) (quoting 18 U.S.C. § 1030(a)(2)(C)).   The Act covers only "intentional[]" violations—intentional efforts to act without authorization or to exceed authorization." 18 U.S.C. § 1030(a)(2).   "The Act prohibits two types of digital trespassing: access *without authorization* and access that *exceeds authorization*." *Abu*, 107 F.4th at 514.   Access "without authorization" refers to "outside hackers—those who access a computer without any permission at all." *Van Buren v. United States*, 593 U.S. 374, 389 (2021).   Access that exceeds authorization targets "inside hackers—those who access a computer with permission, but then exceed the parameters of authorized access by entering an arena" of a computer that

should have been off-limits.  *Id.* at 389-390.  To clarify the difference between an inside and an outside hacker, the Sixth Circuit opined the following illustration:

> Imagine, to picture the distinction, that you open your office door and, to your surprise, find someone already inside.  If the person is a stranger with no right to be in the building, they lack authorization.  If the person is a coworker from down the hall, they may have exceeded their authorized access.  *Abu*, 107 F.4th at 514.

Here, Weiss violated the Computer Fraud and Abuse Act by unlawfully accessing Plaintiffs' private information without authorization.  Weiss did so in the course of his assigned job responsibilities with the University of Michigan.  Weiss's actions constitute a violation of the Act because he "knowingly accessed a computer without authorization" and/or "exceeded authorized access, thereby obtaining... information." 18 U.S.C. § 1030(a)(2)(C).  Weiss qualifies as an "inside hacker" since he initially accessed a computer system with legitimate credentials as part of his work with Plaintiffs in their capacity as student-athletes.  However, Weiss surpassed the scope of his permitted access by entering restricted areas of the digital network.  Defendant The University of Michigan is vicariously liable for Weiss's actions since Weiss conducted them while performing his duties within the University of Michigan's athletic department.

### B.    Defendants Violated the Stored Communications Act.

The Stored Communications Act imposes civil liability on anyone who "intentionally accesses without authorization a facility through which an electronic

communication service is provided; or intentionally exceeds an authorization to access that facility; and thereby obtains . . . a wire or electronic communication while it is in electronic storage." 18 U.S.C. § 2701(a). Here, Weiss accessed Plaintiffs' private data—including messages, files, and media—without authorization while performing duties associated with his role at the University of Michigan. Plaintiffs' private messages, files, and media could not have been accessed without unauthorized entry, and such access would not have occurred had Weiss not been employed by the University of Michigan in his role as Offensive Coordinator. Weiss committed these acts even though both Weiss and Defendant the University of Michigan knew that they had no legal authority to access this data. *See Lasco Foods, Inc. v. Hall & Shaw Sales, Marketing, & Consulting, LLC*, 2009 WL 3523986 (E.D. Mo. Oct. 26, 2009) (permitting SCA claim when employee accessed computer system other than for employer's benefit).

### C.     Defendants Violated Title IX.

"Title IX prohibits discrimination on the basis of sex in any education program receiving federal funding." *Doe on behalf of Doe #2 v. Metro. Gov't of Nashville & Davidson Cnty., Tennessee*, 35 F.4th 459, 463 (6th Cir. 2022) (citing 20 U.S.C. § 1681(a)). "While this statute doesn't expressly provide a cause of action, the Supreme Court has told us that Title IX is enforceable through an implied right of action." *Goldblum v. Univ. of Cincinnati*, 62 F.4th 244, 251 (6th Cir. 2023). In a

11

deliberate indifference case, "a plaintiff seeks to hold an institution liable for sexual harassment and . . . [is required to] demonstrate that an official of the institution who had authority to institute corrective measures had actual notice of, and was deliberately indifferent to, the misconduct." *Mallory v. Ohio Univ.,* 76 Fed.Appx. 634, 638 (6th Cir.2003).

Here, Weiss specifically targeted women in his unwanted privacy violations, constituting sex-based discrimination. Additionally, Defendant the University of Michigan was fully aware of the highly sensitive nature of Plaintiffs' private and personal information, which Weiss was able to access due to his position. Defendants the University of Michigan and Regents of the University of Michigan are also liable for Title IX violations because both Defendants displayed deliberate indifference to sexual harassment by (1) failing to protect Plaintiffs and others in accordance with Title IX requirements; (2) neglecting to properly investigate and address concerns regarding the deeply private information Plaintiffs entrusted to them; (c) not implementing corrective measures to prevent Weiss from engaging in further sexual harassment of students; and (4) failing to investigate additional acts of deliberate indifference adequately.

**D. Defendants Violated Plaintiffs' Civil Rights Under 42 U.S.C. § 1983 – State Created Danger.**

"The Due Process Clause of the Fourteenth Amendment protects against state actions which deprive a person of life, liberty, or property without due process of

law." *A.P. by & through Pyscher v. A.P.*, 598 F. Supp. 3d 598, 605 (E.D. Mich. 2022).  "Generally, a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause" however "[a]n exception exists in instances where the State renders a person more vulnerable to the dangers to which he was exposed . . . This is known as the state-created danger doctrine, which imposes a duty on the state to protect its citizens from risks of harm that are caused or greatly increased through its own affirmative acts."  *Nelson-Molnar v. Ann Arbor Pub. Sch.*, No. 23-CV-11810, 2024 WL 2059709, at *3 (E.D. Mich. May 8, 2024) (internal quotations omitted).  To state a cause of action for a due process violation based on a state created danger, Plaintiffs must show: (1) "an affirmative act by state which either created or increased the risk that [they] would be exposed to violence by a third party;" (2) "a special danger to [them] wherein the state's actions placed [them] specifically at risk, as distinguished from a risk that affects the public at large;" and (3) that the state was aware of the "substantial risk of serious harm" and responded in a way that was "conscious shocking."  *M.J. by & through S.J. v. Akron City Sch. Dist. Bd. of Educ.*, 1 F.4th 436, 449 (6th Cir. 2021).

Here, Defendants Regents of the University of Michigan and the University of Michigan knowingly and recklessly exposed Plaintiffs to a dangerous individual, Weiss, despite being aware of his potential to inflict serious harm through sexual harassment and violations of their privacy.  Plaintiffs, as female student-athletes,

were foreseeable victims of such misconduct.   Additionally, the Regents of the

University of Michigan and the University of Michigan took affirmative actions that

deprived Plaintiffs of a safe campus environment, thereby creating the risk of harm

to Plaintiffs that allowed Weiss to access Plaintiffs' personal and intimate

information. *See Kallstrom v. City of Columbus*, 136 F.3d 1055, 1059, 1065–67 (6th

Cir. 1998) (finding a state-created danger based on the release of private information

"in the fall of 1995."). Defendants could have attempted to mitigate the harm caused

to Plaintiffs, but have not done so by withholding information from victims and

continuing to possess Plaintiffs' stolen properties.

### E.   Defendants Failed to Train and Supervise as Required by 42 U.S.C. § 1983.

"A failure to train, screen, or supervise is a mechanism for [plaintiffs] to

establish liability on the part of a municipal employer." *Lipian v. Univ. of Michigan*,

453 F. Supp. 3d 937, 963 (E.D. Mich. 2020).  "A plaintiff who sues a municipality

for a constitutional violation under § 1983 must prove that the municipality's policy

or custom caused the alleged injury. *Ellis*, 455 F.3d at 700.  One way to prove an

unlawful policy or custom is to show a policy of inadequate training or supervision."

*Id.*  "To succeed on a failure to train or supervise claim, the plaintiff must prove the

following: (1) the training or supervision was inadequate for the tasks performed;

(2) the inadequacy was the result of the municipality's deliberate indifference; and

(3) the inadequacy was closely related to or actually caused the injury." *Id.*

14

Here, Defendant the University of Michigan and Regents of the University of Michigan bore the responsibility and authority to train and oversee their employees, agents, and representatives, including Weiss. However, the University of Michigan and the Regents of the University of Michigan neglected to properly train and supervise Weiss as well as other employees, representatives, and agents regarding their obligations, which included but were not limited to (1) recognizing, addressing, and preventing incidents of sexual harassment on campus; (2) identifying, reporting, and preventing unauthorized invasions of privacy on campus; and (3) ensuring diligent oversight of student athletes and other individuals including Weiss. These failures to provide adequate training directly contributed to Weiss accessing Plaintiff's personal information.

### F.    Defendant Weiss is Liable for Intrusion upon Seclusion.

To establish an action for intrusion upon seclusion, Plaintiff must demonstrate "(1) the existence of a secret and private subject matter; (2) a right possessed by the plaintiff to keep that subject matter private; and (3) the obtaining of information about that subject matter through some method objectionable to a reasonable man." *Doe v. Peterson*, 784 F. Supp. 2d 831, 842 (E.D. Mich. 2011). "An action for intrusion focuses on the manner in which information is obtained, not its publication." *Doe*, 784 F. Supp. 2d at 842. An action for intrusion upon seclusion does not exist where "[t]he only aspect of the contemplated disclosure offensive to

the plaintiffs is the fact of the disclosure, not the method by which it was obtained." *Tobin v. Michigan Civ. Serv. Comm'n*, 416 Mich. 661, 674, 331 N.W.2d 184, 190 (1982).  Here, Plaintiffs' personal social media content, videos, and other images were stored electronically and Plaintiffs intended for that information to remain private.  However, Weiss unlawfully and without authorization accessed Plaintiffs' private and personal information in a shocking manner—hacking.

### G.   Defendant Weiss was Grossly Negligent.

A valid claim for gross negligence requires "proof of conduct 'so reckless as to demonstrate a substantial lack of concern for whether an injury results.'"  *Reilly v. Vadlamudi*, 680 F.3d 617, 627 (6th Cir. 2012).  "Ordinary negligence does not suffice; it must be as though, if an objective observer watched the actor, he could conclude, reasonably, that the actor simply did not care about the safety or welfare of those in his charge."  *Arthur v. Hepler*, No. 19-11277, 2019 WL 6038530, at *1 (E.D. Mich. Nov. 14, 2019).  Here, Weiss acted in a grossly negligent manner by unlawfully accessing Plaintiffs' private information without authorization even though Plaintiffs had a fundamental right to maintain confidentiality of this information.  Weiss did so even though he had an obligation to protect student athletes in his role within Michigan's athletic department.

### H.   Defendants were Negligent in Hiring Keffer.

The "gravamen" of a negligent hiring claim "is that the employer bears some

16

responsibility for bringing an employee into contact with a member of the public despite knowledge that doing so was likely to end poorly." *Mueller v. Brannigan Bros. Restaurants & Taverns LLC*, 323 Mich. App. 566, 574, 918 N.W.2d 545, 552 (2018). A negligent hiring claim "requires actual or constructive knowledge by the employer that would make the *specific* wrongful conduct perpetrated by an employee predictable." *Id.* at 575. Here, the University of Michigan and the Regents sanctioned Keffer's collection of Plaintiffs' private information. Defendants are liable for negligent hiring because the University of Michigan and the Regents neglected to investigate Keffer's protocols or implement safeguards regarding Keffer's work with students and their private images. Moreover, the University of Michigan and the Regents of the University of Michigan failed to review Keffer's contract, investigate Keffer's practices, implement oversight mechanisms, or consider measures to prevent students' exposure to Weiss prior to hiring Keffer.

## I.     Defendant University of Michigan was Negligent as to Training, Supervision, Entrustment, and Retention.

The University of Michigan neglected to evaluate, establish, or enforce any policies, procedures, or reasonable safeguards that would have educated Weiss on the harm caused by invading Plaintiffs' private information. "An employer can be held vicariously liable for the wrongful acts of its employees that are committed while performing some duty within the scope of their employment." *Jaber v. P & P Hosp., LLC*, 2024 WL 5011976, at *11 (Mich. Ct. App. Dec. 6, 2024) (citing

*Hamed v Wayne Co.*, 490 Mich. 1, 10-11, 803 N.W.2d 237 (2011)).  "Additionally, the common law recognizes a duty premised on negligent hiring, training, and supervision."  *Id.*  Put simply, "employers can be found liable for 'their negligence in hiring, training, and supervising their employees.'"  *Id.* (quoting *Zsigo v Hurley Med. Ctr.*, 475 Mich. 215, 227, 716 N.W.2d 220 (2006)).

Here, Defendant the University of Michigan neglected to evaluate, establish, or enforce any policies, procedures, or reasonable safeguards that would have educated Weiss on the harm caused by invading Plaintiffs' private information.  As a prominent institution, the University of Michigan led Plaintiffs to reasonably expect that a coach would be properly trained to respect and protect their personal and private information.  Additionally, the University of Michigan had a duty—but failed—to develop and enforce a policy to ensure Weiss was trained to protect students like Plaintiffs from predatory behavior but neglected to do so.  Moreover, the University of Michigan had previously been warned about the risks posed by external vendors who could compromise student-athletes' privacy.  But despite these warnings, the Regents and the University proceeded to hire and retain Weiss, who ultimately violated Plaintiffs' privacy along with that of others.

### J.    Defendant Weiss is Liable for Trespass to Chattels.

"The gist of a trespass to personalty, also known as trespass to chattels, is an injury to, or interference with, possession, unlawfully, with or without the exercise

of physical force." *Tobias v. Pletzke*, 933 F. Supp. 2d 892, 919 (E.D. Mich. 2013) (quoting 2 Linda Miller Atkinson et al., *Torts: Michigan Law and Practice* § 13.53 (ICLE 2011 supp.)).  "A trespass to chattels is actionable if one dispossesses another of or intentionally and harmfully interferes with another's property." *Mackie v. Bollore S.A.*, No. 286461, 2010 WL 673295 at *4 (Mich. Ct. App. Feb. 25, 2010) (citing Restatement (Second) of Torts §§ 217-219 (Am. L. Inst. 1965).  As stated in § 218 of the Second Restatement of Torts, "[o]ne who commits a trespass to chattels is subject to liability to the possessor of the chattel if, but only if, (a) he dispossesses the other of chattel, . . . (b) the chattel is impaired as to its condition, quality or value, . . . (c) the possessor is deprived of the use of the chattel for a substantial time, or (d) bodily harm is caused to the possessor . . ." *Yannotti v. City of Ann Arbor*, No. 22-12147, 2024 WL 3585089, at *2 (E.D. Mich. July 30, 2024) (quoting Restatement (Second) of Torts § 218 (Am. L. Inst. 1965)).  Here, as explained above, Weiss intentionally and unlawfully accessed Plaintiffs' private and personal information, including images, videos, and social media, thereby wrongfully asserting control over and interfering with their sensitive data without authorization.  This was information Plaintiffs expected to keep private because Plaintiffs had a fundamental right to maintain the confidentiality of this information.

### K.    Defendants Weiss and Keefer Violated MCL § 600.2919a.

"Conversion, both at common law and under the statute, is defined as any

19

distinct act of domain wrongfully executed over another's personal property in denial of or inconsistent with the rights therein." *Magley v M & W Inc*, 325 Mich App 307, 314, 926 N.W.2d 1 (2018). "For instance, a conversion may be committed by the refusal to surrender property on demand." *Dunn v Bennett*, 303 Mich App 767, 778, 846 N.W.2d 75 (2014). "In general, [conversion] is viewed as an intentional tort in the sense that the converter's actions are [willful], although the tort can be committed unwittingly if unaware of the plaintiff's outstanding property interest." *Foremost Ins Co v Allstate Ins Co*, 439 Mich. 378, 391, 486 N.W.2d 600 (1992). MCL § 600.2919a states:

> (1) An individual who suffers harm due to either or both of the following may recover three times the amount of actual damages sustained, along with costs and reasonable attorney fees:
>
>> (a) Another individual stealing, embezzling, or wrongfully converting property for their own use.
>>
>> (b) Another individual purchasing, receiving, possessing, concealing, or assisting in the concealment of stolen, embezzled, or converted property, with knowledge that the property was unlawfully obtained.
>
> (2) The remedy provided under this statute is supplemental to any other legal or equitable right or remedy available.

"Treble damages for statutory conversion are available under MCL 600.2919a(1)(a), but, in addition to the common-law elements for conversion, a plaintiff claiming statutory conversion must show that the defendant employed the converted property for some purpose personal to the defendant's interests, even if that purpose is not the

20

object's ordinarily intended purpose." *Magley*, 325 Mich App at 314 n 3, 926 N.W.2d 1.  Here, Plaintiffs suffered harm due to Defendants acquiring, concealing, assisting in the concealment of, stealing, and/or misappropriating Plaintiffs' private information by accessing Plaintiffs' private personal information. Defendants also wrongfully used Plaintiffs' images, videos, and data for their own benefit.

### L.      Defendant Weiss is Liable for Assault.

Tortious assault is defined as "any intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact." *Johnson on behalf of X.M. v. Mount Pleasant Pub. Sch.*, 745 F. Supp. 3d 479, 522–23 (E.D. Mich. 2024).  Here, Weiss's conduct in accessing Plaintiffs' personal and private information as previously outlined was intentional and without consent or justification.  He also created a reasonable apprehension of imminent harm to Plaintiffs by gaining access to Plaintiffs' personal information without making his purpose clear.

### M.      Defendant Weiss is Liable for Intentional Infliction of Emotional Distress.

"To establish a claim of intentional infliction of emotional distress, a plaintiff must prove the following elements: '(1) extreme and outrageous conduct, (2) intent

or recklessness, (3) causation, and (4) severe emotional distress.'"   *Parker v.*

*Midwest Loan Servs., Inc.*, No. 15-11708, 2016 WL 1242440, at *3 (E.D. Mich. Mar.

30, 2016) (quoting *Hayley v. Allstate Ins. Co.,* 262 Mich.App. 571, 577, 686 N.W.2d

273 (2004)).   Extreme and outrageous conduct is conduct that "must be so

outrageous in character, and so extreme in degree, as to go beyond all possible

bounds of decency, and to be regarded as atrocious and utterly intolerable in a

civilized community."   *Hayley,* 262 Mich.App. at 577, 686 N.W.2d 273.   Here,

Weiss is liable for infliction of emotional distress because his hacking into Plaintiffs'

personal information was done purposefully and directly caused Plaintiffs' injuries.

As alleged by Plaintiffs' Amended Complaint, Plaintiffs suffered severe emotional

distress and economic damage because of Weiss's intentional actions.

### N.    Defendants Violated Michigan's Identity Theft Protection Act.

Michigan's Identity Theft Protection Act prohibits the "use or [the] attempt to

use the personal identifying information of another person" to "[o]btain credit,

goods, services, money, property, a vital record, a confidential telephone record,

medical records or information, or employment," or to "[c]omit another unlawful

act."   MCL § 445.65(1); *see also Nichols v. Wayne Cnty., Michigan, 822 F. App'x*

*445 (6th Cir. 2020)*; *Doyle v. Detroit Dev. Real Est., L.L.C.*, No. 298354, 2011 WL

3594001 (Mich. Ct. App. Aug. 16, 2011).   Here, Plaintiffs' personal social media

content, videos, and other images were stored electronically and were intended to

remain private.  Weiss accessed this private information without authorization. Further, the other Defendants had a duty to notify Plaintiffs of the unauthorized breach of their private data but failed to do so.  As a result, Plaintiffs were completely unaware for years that their highly sensitive, private data was being accessed without their authorization in violation of Michigan's Identity Theft Protection Act.

## II.   PLAINTIFFS WILL SUFFER IRREPARABLE HARM WITHOUT A PRELIMINARY INJUNCTION.

"Similar to a finding of likelihood on the merits, a finding of irreparable harm is 'indispensable' and '[i]f the plaintiff isn't facing imminent and irreparable injury, there's no need to grant relief *now* as opposed to the end of the lawsuit." *Automation & Modular Components, Inc. v. Blackford*, No. 23-CV-12420, 2023 WL 7276487, at *5 (E.D. Mich. Nov. 3, 2023) (quoting *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 327 (6th Cir. 2019)).  Irreparable harm is defined as "[a]n injury that cannot be adequately measured or compensated by money."  *Cellnet Comm'ns, Inc. v. New Par*, 291 F. Supp. 2d 565, 569 (E.D. Mich. 2003).  Here, Plaintiffs will suffer irreparable harm without an injunction requiring Defendant University of Michigan and Keffer to bear the expense of securely transferring all private information in its possession related to the Weiss investigation to a forensic data security firm that would (a) be entrusted with securing the evidence in this case; and (b) be responsible for communicating directly with any student-athletes regarding sensitive, intimate, or otherwise private information because Weiss's ability to easily penetrate

Plaintiffs' personal information stored by both Defendant University of Michigan and Keffer calls into question the security of existing evidence.   Indeed, the University of Michigan is notoriously the target of cyber terrorism attacks all the time and famously suffered a widespread data security breach in 2023 that compromised the private information of hundreds of thousands of students, alumni, and staff.[2]   The evidence needs to be preserved so that Plaintiffs can properly prosecute their claims against Defendants without worry of spoliation.

## III.   THE INJUNCTION WOULD NOT CAUSE SUBSTANTIAL HARM TO OTHERS.

"An inquiry into whether there will be substantial harm to others is a fact-based inquiry." *Automation & Modular Components, Inc.*, 2023 WL 7276487 at *7. This factor weighs in favor of granting Plaintiffs' preliminary injunction because "the court's decision will not have an impact on anyone besides the parties to this litigation." *Apex Tool Grp., LLC v. Wessels*, 119 F. Supp. 3d 599, 610 (E.D. Mich. 2015).  Indeed, the injunction would have no impact on the public and no impact on anyone other than the parties to this lawsuit.

## IV.   THE INJUNCTION IS IN THE PUBLIC INTEREST.

The injunction Plaintiffs seek will advance the public interest because it is unquestionable that the public has a great interest in preserving evidence.  It is true

---

[2]   https://www.cbsnews.com/detroit/news/university-of-michigan-hackers-gained-personal-information-cyberattack/ (**Ex. 1**.)

that "[g]enerally, preservation orders are unnecessary because parties to civil litigation 'have a duty to preserve relevant information.'" *Hogue v. Am. Paper Optics, LLC*, No. 217CV02670MSNDKV, 2019 WL 1318559, at *3 (W.D. Tenn. Jan. 14, 2019) (quoting *Swetlic Chiropractic & Rehab. Ctr., Inc. v. Foot Levelers, Inc.*, No. 2:16-CV-236, 2016 WL 1657922, at *2 (S.D. Ohio Apr. 27, 2016)). However, here, the fact that both Defendant University of Michigan and Keffer now have established histories of failing to protect personal data tilts this factor in favor of granting Plaintiffs a preliminary injunction to ensure that nothing happens to the evidence in Defendants' possession before discovery commences.

## CONCLUSION

Plaintiffs respectfully move this Court for an order requiring Defendant University of Michigan and Keffer to bear the expense of securely transferring all private information in its possession related to the Weiss investigation to a forensic data security firm that would (a) be entrusted with securing the evidence in this case; and (b) be responsible for communicating directly with any student-athletes regarding sensitive, intimate, or otherwise private information.

<div style="margin-left: 40%;">

Respectfully submitted,

HURWITZ LAW PLLC

*/s/  Brendan J. Childress*
Noah S. Hurwitz (P74063)
Brendan J. Childress (P85638)
HURWITZ LAW PLLC

</div>

Dated:  April 13, 2025

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on April 13, 2025, I electronically filed or caused to be filed Plaintiff's Motion for Preliminary Injunction with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record.

<div align="right">

*/s/  Brendan J. Childress* (P85638)

</div>